FILED

MAR 06 2013

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

| | |
|---|---|
| In the Matter of the Search of | ) |
| The business and curtilage known as ▮ | ) |
| ▮ | ) |
| ▮ | ) |
| Fairview Heights, IL 62208 | ) |
| Including any computers or computer-related | ) |
| media (See Attachments A and B) | ) |

NO. 13-mj-3024-DGW

FILED UNDER SEAL

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## UNDER RULE 41 FOR A WARRANT TO
## SEARCH AND SEIZE

I, Tyson Imming, being first duly sworn, depose and state as follows:

1. I am a Special Agent with Immigration & Customs Enforcement, Homeland Security Investigations (hereinafter referred to as HSI), and have been so employed since April 17, 2006. Prior to April 17, 2006, I was employed as an Immigration Agent with ICE since March 1, 2003. Prior to March 1, 2003, I was employed with the Immigration and Naturalization Service as an Immigration Agent, Detention Enforcement Officer and a Border Patrol Agent. My duties as a Special Agent include the investigation of any criminal or administrative violations of the Immigration and Nationality Act and criminal violations involving the unlawful movement of people and goods within and out of the United States. As part of my regular duties, I investigate criminal violations relating to prostitution, particularly of aliens, the use of computers relating to aliens and prostitution, and forced labor in violation of 18 U.S.C. §§ 1589, 1952(a)(3), and 2424.

2. I have received training in the area of prostitution and forced labor and have been involved in several investigations of these offenses as well as the unlawful harboring and transportation of females engaged in prostitution. I also have received training specific to harboring aliens and/or the use of computers. I also have participated in the execution of numerous search warrants and enforcement actions, some of which involved forced labor, harboring aliens, and/or the transportation of females engaged in prostitution offenses.

3. I am investigating the ▮ ▮ Fairview Heights, IL 62208. The business advertises ▮ on the Internet classified website Craigslist.com. As will be shown below, there is probable cause to believe that ▮ is causing another to work ▮

1

4. I submit this application and affidavit in support of a search warrant authorizing a search of the business and curtilage known as the ███████████████, Fairview Heights, Illinois 62208, including any computers or computer-related storage devices found thereon, as further described in **Attachment A** (the ████████████). I am also seeking authority to seize on and within the SUBJECT PREMISES the items specified in **Attachment B**, which may constitute evidence, fruits, and instrumentalities of the foregoing criminal violations.

5. The statements contained in this affidavit are based upon my training and experience as a Special Agent with HSI, information provided to me by other law enforcement officers and investigators, and information I have obtained through consultation with personnel trained in the investigation, seizure, and analysis of computers, electronic data, and electronic media.

6. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of ████████████████████ are present on the SUBJECT PREMISES.

## STATUTORY AUTHORITY

7. This investigation concerns alleged violations of Title 18, United States Code, Sections 1589, 1952(a)(3), and 2424, relating to using forced labor, using the internet to promote a prostitution business, and the failure to file a statement about alien individuals kept, harbored, controlled, or maintained in a place for the purpose of prostitution.

8. Under 18 U.S.C. § 1589, it is a federal crime for a person to knowingly provide or obtain the labor or services of another person by force, threats of force, physical restraint, or threats of physical restrain, serious harm or threats of serious harm, abuse or threatened abuse of the law or legal process, or any scheme, plan, or pattern intended to cause the person to believe if the person did not perform certain labor or services, the person or another would suffer serious harm or physical restraint. A person who knowingly benefits, financially or by receiving anything of value, from participating in a venture which has engaged in the providing or obtaining of labor or services by any means described in the previous sentence, or knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by such means also violates section 1589.

9. Section 1952(a)(3) makes it a federal crime to use any facility in interstate or foreign commerce with the intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity and thereafter promotes, manages, establishes, carries on an unlawful activity or attempts to do so. This section defines an "unlawful activity" to include "prostitution offenses in

2

violation of the laws of the State in which they are committed." 18 U.S.C. § 1952(a)(3) & (b).

10. Title 18, United States Code, Section 2424 makes it a federal crime for any person who keeps, maintains, controls, supports, or harbors in any place for the purpose of prostitution or for any other immoral purpose, any individual, knowing or in reckless disregard of the fact that the individual is an alien, and fails to file with the Commissioner of Immigration and Naturalization a statement in writing setting forth name of the individual, their location, age, nationality, and certain immigration information within five days of the person commencing to keep, maintain, control, support, or harbor the alien for prostitution or other immoral purposes.

## DEFINITIONS

11. "Computer," as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such devices." For purposes of this search warrant, the term "computer" also encompasses computer software and data security devices.

12. "Computer software," as used herein, is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

13. "Data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

14. "Computer-related media," as used herein, encompasses all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data, including any data-processing devices (such as central processing units, internal drives, and fixed disks); peripheral storage devices (such as external hard drives, floppy diskettes, compact discs (CDs), digital video disks ("DVDs"), Personal Digital Assistants ("PDAs"), memory cards, Subscriber Identity Module ("SIM") cards, and USB thumb drives); peripheral input/output devices (such as modems, routers, keyboards, printers, scanners, copiers, monitors, webcams,

3

digital cameras, digital music players, cell phones, and video game consoles); as well as related equipment (such as cables and connectors).

15. "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet. IP addresses can be dynamic, meaning that the Internet Service Provider (ISP) assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be static, if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

16. The phrase "records, documents, and materials" includes all information recorded in any form by any means, whether in handmade form (such as writings, drawings, or paintings), photographic form (such as developed film, print-outs, slides, negatives, or magazines), type-written form (such as print-outs, books, pamphlets, or other typed documents); audio/visual form (such as tape-recordings, videotapes, DVDs, or CDs), or electronic form (such as digital data files, file properties, computer logs, or computer settings).

███████████ **AND COMPUTERS**

17. Based on my knowledge, training, and experience in ████████████████
████████████████████████████████████████
officers with whom I have had discussions, individuals typically either conduct their
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

18. Also, I know that clients of these women often post reviews of their experiences online to both aid other individuals involved in the same type of activity and to avoid law enforcement efforts to stop the activity.

19. One type of ████████████ business commonly known as an ████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

20. In my knowledge, training, and experience, I know it is common for individuals advertising ████████ services online to describe the service as ████████████ type services on websites like ████████████████ to disguise unlawful

4

███████████. The advertisements ███████████████████████
████████████████.

21. The Internet therefore affords individuals different venues for advertising and discussing ████████████████████████████ in a relatively secure and anonymous fashion.

22. The Internet can be accessed through the use of a router. Routers often store important information about other computers that have obtained Internet access through them. A wireless router is a device that performs the functions of a router without the need for a cabled connection. If an unauthorized user obtains access to the Internet via another person's wireless router, evidence of the unauthorized access can often be found on the router itself.

23. Computers, in turn, can serve three basic functions in connection with ████████████ ████████████.

24. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.

25. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows the user's identity and pattern of use. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools.

26. Further, evidence of how a digital device has been used, what it has been used for, and who has used it may be learned from the <u>absence</u> of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of items sought by this application.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

27. Although automated on-scene search tools can extract a significant amount of data, searches and seizures of evidence from computers commonly require agents to seize most or all computers and computer-related media, to be processed later by a qualified

computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

    a. Those who use a computer to conceal criminal evidence often transfer copies of the illicit files onto removable storage devices like external hard drives, CDs / DVDs, and USB thumb drives. These devices, though sometimes very small, can store the equivalent of thousands of pages of information. Extracting and searching the files stored on these devices can be time consuming.

    b. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order and with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on-site or even within the period specified for execution of the search warrant.

28. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computers and computer-related media available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password protected, or encrypted files. Although it is not always necessary, because computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is ideal for a complete and accurate analysis.

## **BACKGROUND OF THE INVESTIGATION**

29. On January 24, 2013, I received information from Officer Greg Hosp of the Fairview Heights, IL Police Department (FHPD) concerning ▮▮▮▮▮▮▮▮▮▮ believed to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮, (as further described in **Attachment A**).

30. FHPD Officer Hosp informed me that his agency has conducted surveillance, patrol activity, and local record checks related to the ▮▮▮▮▮▮▮▮▮▮▮▮▮. These efforts resulted in identifying information and encounters with the subjects believed to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮, identified below, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮:

████████████████████████████
████████████████████████████
███████████████████████

31. The officers with FHPD indicated that not once during their surveillance did they see ██████ or ████████ leave the ████████████████ after opening the business in the morning until closing in the evening, nor did they see any other women enter the ████████████████ to work. The ██████████████████████ ██████████████████████ and from ████████████████████ ██████████. ██████████████████████ were observed arriving together in one vehicle and leaving together at the end of the work day. ██ would arrive and depart the ████████ ██████████ at different times throughout the day.

32. FHPD Officer Hosp also informed me that his law enforcement agency encountered ████████████████████ during a traffic stop on January 19, 2013. During this stop, the ████████████ drove ████████████████████ with ██████████████████████ Additional surveillance by the FHPD indicated ████████████████████████████ ██████████████████████████████████ Illinois, with LI. Documentation for the apartment lists ████████████ as residents, but not ██████████.

33. FHPD Officer Hosp further informed me that his law enforcement agency encountered ██ at approximately 5:30 PM on January 24, 2013, while ██████████████████████ ████████████ after leaving ████████████████. ██████████████████████ ████████████████████████ and is in the area to visit his girlfriend who lives in the ████████████████.

34. The FHPD provided me with information received during local record checks on the ████████████████ including city business occupancy information and city inspection and emergency contact information on file. Specifically, the Fairview Heights building permit for the business was applied for by ██. During this application process, ██ provided ████████████, but stated that ██ lived in ████████████.

35. Records from the fire inspector in Fairview Heights, Illinois indicate that ██████████ ██████████████████████████████████████████████ Upon finding ████████, the fire inspector informed ████████████████████████.

36. Emergency contact information on file for the ████████████████ with the FHPD indicates the business is owned by ████████████. ██████████████████████ ████████████████████, Fairview Heights, Illinois. The

████████████████ city business license application indicates the business owner's name is ██████ and the manager is ██.

37. Based on this information, on January 25, 2013, I conducted immigration computer indices checks to determine the immigration status of the ████████████ who work and/or operate the ████████████████. Records indicate that each individual is █ ████████████████████ and ████████████████████. The following alien file numbers were found:

████████████████████

████████████████████

████████████

38. That same day, I provided Officer Hosp with digital file photographs for ████████ ████████ from immigration records to confirm their identities. Officer Hosp reviewed these photographs and affirmed these ████████████ are the ones he has observed and encountered during his surveillance of the ████████████████.

39. Additionally, I searched the Illinois Department of Financial & Professional Regulation's (IDFPR) website to determine if any of the three individuals ████████████████ are licensed in the ████████████████ as required by 225 ILCS 57/ the ████████████████ I did not find any records indicating ████████████ are licensed ████████████, although Officer Hosp discovered a possible match for ████████. Because the website has limited search functions, the results are inconclusive.

40. Also, on or about January 24, 2013, FHPD Officer Hosp also provided me with information that the ████████████████ advertises on Craigslist.com. I know that the search function on this website will produce matches from approximately the two previous weeks of historical postings using a key-word search. I conducted searches on Craigslist on that date for ████████████ █ ████████████ and found that several postings had been made for the ████████████████ as often as once per day during this two week time period. Each posting had the following language:

████████████ ████████████ █ ████████████████████
████████████████████
████████████████ █ ████████████
████████████████
████████████████
████████████████████
████████████
████████
████████████

8



41. The advertisement includes a photo of an ▮▮▮▮ and ▮ for the business location. Open source Internet searches for the image of the ▮ resulted in 68 matches with several different image resolutions and sizes on a variety of websites. No actual identity of this woman is known, nor have any FHPD Officers observed this ▮ working at the ▮▮▮▮

42. I requested records from Craigslist.com for account information and posting history for the classified advertisements found for the ▮▮▮▮. I received a response from this company indicating that during the time period of October 20, 2012, through February 7, 2013, ▮▮▮▮ were made on Craigslist by user name: ▮▮▮ ▮▮▮, user id: ▮▮▮ and email address ▮▮▮▮. Sixty (60) of these posts were received by Craigslist.com from the ▮▮▮ address ▮▮▮.

43. I conducted research on this ▮▮▮ and discovered it is ▮▮▮▮ ▮▮▮. On February 8, 2013, I requested user account identifying information from ▮▮▮▮ for three of the occasions that this ▮▮▮ Craigslist.com to post classified advertisements found for the ▮▮▮▮

44. On March 1, 2013, I received information from ▮▮▮▮ that this ▮ ▮ is uniquely assigned to the following ▮▮▮:

   Name: ▮▮▮▮
   Date Established: 9/18/2012
   Status: Open
   ▮▮▮▮ ▮ ▮▮▮▮

45. On or about February 22, 2013, Officer Hosp provided three police reports documenting statements from client's who had patronized the ▮▮▮▮ and had purchased ▮▮▮▮ services or had been offered ▮▮▮▮ services, but refused. The following are summaries of each report:

9

a. <u>Client 1</u>

On December 21, 2012, a customer of the ██████████████████████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████ █ █████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████

b. <u>Client 2</u>

On February 1, 2013, a customer of the ████████████████████████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████ █ █████████████████████
██████████████████████████████████████████ █ ███████████
██████████████████████████████████████████████████████
████████████████████████████████████████████

c. <u>Client 3</u>

On February 19, 2013, a customer of the ███████████████████████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████████████████ █ ████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████



46. In January and February 2013, I am aware that the FHPD also stopped █████████ of the █████████████ for traffic violations while conducting surveillance. █████
████████████████████

47. On February 13, 2013, HSI and the FHPD conducted an operation to monitor an

48. The

49. On or about February 22, 2013, I conducted file reviews of the █████████████ for █████████████. I discovered each subject is currently █████████

50. No information or written statement was found during these record checks and █████ ████ processes to indicate █████████ Commissioner of Immigration and Naturalization (INS) or its successor agency under the Department of Homeland Security, Citizenship and Immigration Services (CIS) in reference to or █████████████████ being kept, maintained, controlled, supported or harbored in any place for █████████████ or for any other ████████████████

51. On February 8, 2013, I conducted Internet inquiries for the █████████████ and discovered approximately ████████ related to the █████████ on the

11

website ▮▮▮▮▮▮▮▮▮▮ -St. Louis/Chicago section ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ is one of several known websites with information related to the St. Louis, Missouri, geographic area which is maintained for the purpose of posting and sharing reviews, experiences, prices, advice and warnings for other persons who patronize ▮▮▮▮ as well as allow for individuals to ▮▮▮▮▮▮ services to this clientele. These posts are made anonymously through the use of a "user name." The services offered or reviews made rely heavily on the use of code words and abbreviations.

52. I found the following posts related to the ▮▮▮▮▮▮▮▮▮▮ :

53. Based on the common use of the abbreviation ▮▮▮ on this website and posted glossaries of terms and abbreviations found on similar websites, such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it is believed this is an abbreviation for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

## CONCLUSION

54. Based upon the above, and on my experience and training, I believe there is probable cause that there is now concealed on the property doing business as the ▮▮▮▮▮▮▮▮▮▮ Fairview Heights, Illinois 62208 (See **Attachment A**), certain items as described in **Attachment B** which constitute

evidence of the commission of a criminal offense or which is contraband, the fruits of a crime, or things otherwise criminally possessed, or which is designed or intended for use which is or has been used as the means of committing and offense in violation of Title 18 United States Code ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

55. I respectfully request that the Court issue a warrant and order of seizure authorizing the search of the ██████████████████████████████████████ Fairview Heights, Illinois 62208, more fully described in **Attachment A**, and a further search for those items listed in **Attachment B**. Said Attachments will be attached to the warrant.

## REQUEST FOR SEALING

56. I further respectfully request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing these documents is necessary because they pertain to an ongoing investigation. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, e.g., by posting them publicly online through various forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness, as well as the safety of the officers who execute the warrant.

Respectfully submitted,

_Tyson Imming_

Tyson Imming
Special Agent, Homeland Security Investigations

State of Illinois ) 
) SS.
County of St. Clair )

Subscribed to and sworn before me this 6th day of March, 2013, at East St. Louis, Illinois.

_Donald G. Wilkerson_

DONALD G. WILKERSON
United States Magistrate Judge

**ATTACHMENT A**
**DESCRIPTION OF THE PREMISES TO BE SEARCHED**



Photographs of the subject premises:





## ATTACHMENT B
## DESCRIPTION OF PROPERTY TO BE SEIZED

1. Any and all computers and computer-related media, as defined herein. In the execution of this warrant, the agents may seize all computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment.

2. Any and all data security devices or other computer software that may be utilized to create, receive, distribute, store, modify, conceal, or destroy any of the evidence sought.

3. Any and all records, documents, and materials evidencing possession, use, or ownership of any of the premises to be searched or property to be seized.

4. Any and all records, documents, or materials tending to show that ▮▮▮▮ are unlawfully employed as ▮▮▮▮▮, including but not limited to clothing, photographs, business cards, pamphlets or service lists, handwritten notes, appointment books, planners, calendars, answering machine recordings, correspondence between employees and managers or owners of the business, address and/or telephone books, ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮ contraceptives, antibiotics, anti-inflammatory medications, ▮▮▮▮▮▮▮ baby wipes.

5. Any and all records, documents, or materials evidencing the use of force, threats of force, physical restraint, or threats of physical restrain, serious harm or threats of serious harm, abuse or threatened abuse of the law or legal process, or any scheme, plan, or pattern intended to cause the person to believe if the person did not perform certain labor or services, the person or another would suffer serious harm or physical restraint or the participation in a venture that has engaged in the providing or obtaining of labor or services by any means.

6. Any and all records, documents, and materials relating to the proceeds of ▮▮▮▮▮▮▮ and debt servitude, but not limited to books, ledgers, diaries, receipts, notes, journals, memoranda, bank checks, bank deposit tickets, and bank statements.

7. Any and all cash directly related to ▮▮▮▮▮▮▮▮▮▮▮.

8. Any and all records, documents, and materials of state professional employment registration, employment contracts, applications for employment, I-9 Forms, pre-employment documents, W-2, W-4, and 1099 forms; payroll and commission records.